Larry C. Russ (*pro hac vice*)
Marc A. Fenster (*pro hac vice*)
Benjamin T. Wang (*pro hac vice*)
Kent N. Shum (*pro hac vice*)
Andrew D. Weiss (*pro hac vice*)
Minna Y. Chan (*pro hac vice*)
RUSS AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
Telephone:  (310) 826-7474
Facsimile:   (310) 826-6991

Charles R. Macedo (NY 2328318)
AMSTER, ROTHSTEIN & EBENSTEIN LLP
90 Park Avenue, 21st Floor
New York, NY 10016
Telephone:  (212) 336-8074
Facsimile:   (212) 336-8001

*Attorneys for Plaintiff*
*Linksmart Wireless Technology, LLC*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| LINKSMART WIRELESS TECHNOLOGY, LLC<br><br>        Plaintiff,<br>    v.<br><br>DEEP BLUE COMMUNICATIONS, LLC<br><br>        Defendant. | Case No. 1:18-cv-02441-LDH-PK |
| LINKSMART WIRELESS TECHNOLOGY, LLC<br><br>        Plaintiff,<br>    v.<br><br>DCI-DESIGN COMMUNICATIONS, LLC<br><br>        Defendant. | Case No. 2:18-cv-02444-LDH-PK |

## **JOINT RULE 26(F) REPORT**

Pursuant to Rule 26(f) of the Federal Rules of Civil Procedure, Plaintiff Linksmart Wireless Technology, LLC and Defendants DCI-Design Communications LLC ("DCI") and Deep Blue Communications, LLC ("Deep Blue") (DCI and Deep Blue collectively, "Defendants") hereby submit this Rule 26(f) Report. This report reflects the parties' early meeting and discussions, which began on December 6, 2019.

## I. NATURE AND BASIS OF CASE AND CLAIMS AND DEFENSES

***Plaintiff's statement:*** This is a patent litigation action. In April 2018, Linksmart filed its Complaints in the above-captioned cases against the Defendants, alleging infringement of U.S. Patent No. RE46,459 ("'459 Patent" or "Patent-in-Suit"). The '459 Patent is directed to a system for Internet access in a server that dynamically redirects users, i.e., a "redirection server," based on rules that are dynamically and automatically modified by the redirection server itself based on a function of factors that may include, among others, time, user input, data transmitted to the user, or the Internet location accessed by the user. The invention of the '459 Patent was developed in the late 1990's and claims priority to at least as early as May 1998.

Koichiro Ikudome, one of the inventors of the '459 Patent, founded Auric Web Systems, Inc. in 1996 after a decade of IT industry and business experience in Japan and the United States. Mr. Ikudome, along with co-inventor Moon Tai Yeung, developed innovative and fundamental technologies at Auric for users and Internet service providers (ISPs) to enable access to information and commerce on the then-nascent Internet and World Wide Web.

Among Auric's significant product innovations was the "WEBGate card." Auric created the WEBGate card as a prepaid long-distance Internet access card with a pre-determined time limit. Like a prepaid phone card, the Auric's innovative WEBGate card allowed Internet access from anywhere in the United States without paying a long-distance phone bill or looking up local access numbers when users were away from their home or office. As Auric further developed the technology needed to make WEBGate work, Auric also developed other innovative products to enable electronic commerce on the Internet, such as EC Gateway, which combined an access-control system at an ISP system with a CGI module to add customizable graphical buttons to a

merchant's homepage to allow customers to make purchases more easily and add value to Internet services.

Auric's research and development in Internet access-control systems gave rise to the '459 Patent. The automatic redirection system described in the '459 Patent provides a novel architecture for Internet access enabling a more flexible way to mediate a user's access to the Internet. In one embodiment described in the '459 Patent, a redirection server runs on the gateway to the Internet. Once the user is connected to the ISP in this case, the user's requests to the Internet first go to the redirection server. There, the redirection server can filter the requests based on a rule set to either the location requested by the user, or some other location based on rule sets programmed in the redirection server. By way of example, rule sets could be programmed such that a user would need to access a location, *e.g.*, a page with advertising, before being able to freely surf the Web. Another embodiment described in the '459 Patent further provides that the redirection server is configured to be able to automatically modify the rule sets dynamically. For example, if a questionnaire provided by an external server is filled out, the rule set can be changed so that the user no longer needs to access the questionnaire to gain access to the Internet. As another example of the redirection server automatically modifying the rule set if a user has obtained access to the Internet through paid access for a limited time, the user's Internet access could be disabled once that time has been exceeded.

The '459 Patent provides an advantageous technological solution to the problem of mediating user access to the Internet through a redirection server which can automatically modify rule sets for redirection dynamically while connected to a user through a network connection. Among the benefits of the '459 Patent's novel redirection system solution is that (1) redirection is automatic, i.e., a user does not need to request a particular external address; it can be reconfigured for specific users or categories of users; (2) the system can be easily installed and configured by the ISP and it is resilient to potential failures; and (3) the system can dynamically reconfigure the rule set controlling the user's access to the Internet, such as by a function of time or user or external inputs while the user is connected.

Mr. Ikudome subsequently formed Linksmart Wireless Technology, LLC as a way to continue to derive value from the intellectual property of his and Auric's innovative technological contributions, including the '459 Patent. Many companies have directly benefitted from the licensed use of Linksmart's patented technology in the products and services they provide to their customers.

Defendants, however, have taken advantage of Linksmart's patented technology, selling products and services that practice the '459 Patent, in wanton disregard of Linksmart's exclusive property rights. Linksmart has asserted that Defendants' software and platforms that provide a system for guests and visitors to hotels and other facilities to access ISP Services infringe the '459 Patent (collectively, "Accused Products"). The Accused Products include DCI's "Reach HSIA Solution" product, and Deep Blue's WiFi and Internet access products.

The cases between Linksmart and the Defendants are related, at least because they all concern the '459 Patent and will require claim construction of the '459 Patent. They will also likely have the same, or significantly overlapping issues regarding, at least, validity of the '459 Patent. In the interest of judicial efficiency and conservation of the parties' resources, Linksmart respectfully requests the Court to consolidate the cases for all pretrial purposes.

Linksmart opposes Defendants' defenses based on 35 U.S.C. §§ 101, 102, 103, and 112. The claims of the '459 patent are directed towards a novel and patentable improvement in computer technology. When addressing similar arguments to those raised by Defendants here, the court in the District of Nevada recently agreed with Linksmart, and denied the Nevada defendants' arguments that the claims of the '459 patent were directed to an abstract idea. With regard to Judge Guilford's ruling regarding the scope of the claims as compared to the original claims from which the '459 patent derived, Linksmart disagrees with Judge Guilford's ruling. Linksmart has submitted a motion for reconsideration in the Central District of California, and Linksmart believes that Judge Guilford will reconsider his ruling in favor of Linksmart. Further, Defendants' position that collateral estoppel applies is inappropriate because there has been no final judgment on the issue. The issue is not case dispositive, there has not been a judgment entered in the Central District

of California, and the matter in the Central District of California continues to proceed. Further, there is no trial date in California yet. There is no reason to delay or stay this matter as a result of Judge Guilford's ruling, as requested by Defendants below.

***Defendants' statement:*** U.S. Patent No. RE46,459 ("the '459 Patent" or "Patent-in-Suit") was reissued on June 27, 2017 and expired on April 21, 2019. The Patent-in-Suit is a reissue of U.S. Patent No. 6,779,118 (the "'118 patent"). The '118 patent was the subject of various reexaminations by other parties (unrelated to the Defendants), resulting in the cancellation of all claims of the '118 patent. Recognizing that the U.S. Patent and Trademark Office was about to issue a reexamination certificate cancelling all of its patent claims, Linksmart filed an application, with narrowed claims to overcome prior art, to reissue the '118 patent. As a result of the proceedings before the U.S. Patent and Trademark Office, all of the original claims were cancelled, and 43 new claims with narrowed scope were added, resulting in the Patent-in-Suit.

Plaintiff has also asserted the Patent-in-Suit in parallel litigation, against other Defendants, in the Central District of California. On December 13, 2019, Judge Guilford of the Central District of California issued a Claim Construction Order and Order Regarding Defendants' Motion for a Determination that the Claims of the Reissued '459 Patent Are Not Substantially Identical to the Claims of the Original '118 Patent. *Linksmart Wireless Technology, LLC v. Gogo Inc., et al.*, 8:18-cv-00654, Dkt. 97 (C.D. Cal.). Judge Guilford held that the asserted claims of the Patent-in-Suit are not substantially identical to the claims of the '118 patent and accordingly, that Linksmart may only obtain damages for infringement from the date of reissue (June 27, 2017) to expiration (April 21, 2019), and that Plaintiff is precluded from obtaining damages from any earlier period due to the doctrine of intervening rights. Defendants contend that Plaintiff should be estopped from re-litigating this issue, and that should Plaintiff seek to appeal this issue, this case should be stayed while that appeal proceeds. At a minimum, estoppel applies to this issue during the pendency of any appeal. Proceeding to trial with that issue on appeal creates a risk of retrial, and Defendants would propose that any trial take place only after all appeals of that issue have been exhausted, especially since the Patent-in-Suit is expired and the only relief Linksmart seeks is damages.

The Patent-in-Suit also suffers from several fundamental flaws. First, the Patent-in-Suit claims nothing more than the abstract idea of implementing, and modifying, rules regarding access to information. The patent-in-suit fails to claim any particularized, or inventive way of accomplishing that idea, and simply employs conventional equipment to implement an abstract concept. Claims of this nature, which are directed to an abstract idea and nothing more, are barred by 35 U.S.C. § 101 as set forth by the Supreme Court in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014), and subsequently used by district courts and the Federal Circuit.

In addition, Defendants contend that the Patent-in-Suit is invalid under 35 U.S.C. § 102, 103, and 112 (despite the amendments during the reissue proceedings). Defendants also contend that they do not infringe any claim of the Patent-in-Suit. In addition, Defendants have raised a number of other defenses in their Answers including intervening rights and failure to mark.

Defendants are seeking a judgment that Linksmart's Complaints be dismissed with prejudice, that Linksmart's request for damages and all other relief be denied, and that Defendants be awarded their reasonable attorneys' fees and costs.

## II.   PROPOSED DISCOVERY PLAN

Attached to this report is the Proposed Schedule for discovery and claim construction. The parties do not consent to Magistrate Judge jurisdiction for dispositive motions or trial.

The parties also request the above-referenced actions be consolidated for all pretrial issues only into the low-numbered action (No. 1:18-cv-02441-LDH-PK against Deep Blue). There are some common issues among the cases, including claim construction, as well as intervening rights. There may also be some overlapping discovery issues, such as the depositions of the inventors.

## III.   SCOPE OF DISCOVERY

Although the full scope of discovery required cannot be known at this time, the parties anticipate that discovery will be needed on the following topics, among others:

- The '459 Patent, the '118 patent, and related applications, including their prosecution histories, and the reexamination and reissue proceedings;

- The alleged inventions of the asserted claims, and any commercialization thereof;
- Linksmart's claim for patent infringement;
- The structure, design, operation, function, manufacture, and installation of the Accused Products;
- Defendants' development, production, marketing, and sales of the Accused Products;
- Prior art references and prior art systems;
- The Defendants' claims of invalidity;
- The proper construction of the asserted claims of the Asserted Patent;
- Prior litigation involving the Asserted Patent and/or related patent(s);
- Sales and marketing for Accused Products;
- Linksmart's claim for damages;
- The appropriate measure of damages, including the alleged contribution of the claimed invention over the prior art and noninfringing alternatives;
- Alleged knowledge of the Patent-in-Suit possessed by Defendants and/or any of its parent patents or applications;
- The Parties' affirmative defenses and counterclaims;
- The basis for the determination of a reasonable royalty for Defendants' alleged infringement of the Patent-in-Suit;
- Defendants' intervening rights, issue preclusion, and limitations on damages;
- Plaintiff's and Defendants' patent licensing practices and activities; and
- Plaintiff's licensing of and settlement agreements regarding the Asserted Patent and/or related patent(s).

## IV.   PROPOSED CHANGES ON LIMITATIONS TO DISCOVERY

### A.   Protective Order and E-Discovery Order

The Parties are current negotiating a form of a Protective Order and an E-Discovery Order.

B.   **Limits on Written Discovery**

The parties request consolidation of discovery and the following modifications to the default limits on written discovery provided by Rules 33, 34, and 36.

- *Requests for Production*:
    - **Linksmart's Proposal**: Consistent with the Rule 34 of the Federal Rules of Civil Procedure, there is no limit on the number of requests for production.
    - **Defendants' Proposal**: Linksmart may serve 30 common requests for production on all Defendants, and an additional 30 requests for production on each defendant. Defendants collectively may serve 30 common requests for production on Linksmart, and each defendant may serve an additional 30 requests for production on Linksmart.
- *Interrogatories:*
    - **Linksmart's Proposal**: Linksmart may serve 15 common interrogatories on all Defendants, and an additional 10 interrogatories on each defendant. Defendants collectively may serve 15 common interrogatories on Linksmart, and each defendant may serve an additional 10 interrogatories on Linksmart.
    - **Defendants' Proposal**: Consistent with Rule 33 of the Federal Rules of Civil Procedure, Linksmart may serve 25 interrogatories on each defendant. Each Defendant may serve 25 interrogatories on Linksmart.
- *Requests for Admission:*
    - **Linksmart's Proposal**: Linksmart may serve 25 common requests for admission on all Defendants, and an additional 25 requests for admission on each defendant. Defendants collectively may serve 25 common requests for admission on Linksmart, and each defendant may serve an additional 25 requests for admission on Linksmart. These limits

    do not apply to requests for admission for authentication of documents and things and/or whether a document qualifies as a printed publication under 35 U.S.C. § 102.

    o **Defendants' Proposal**: Linksmart may serve 50 requests for admission on each Defendant. Each Defendant may each serve 50 requests for admission on Linksmart. These limits do not apply to requests for admission for authentication of documents and things and/or whether a document qualifies as a printed publication under 35 U.S.C. § 102.

C. **Limits on Depositions**

- *Fact Deposition Time:*
    - **Linksmart's Proposal**: The parties shall comply with the limits and procedures set forth in Rule 30 of the Federal Rules of Civil Procedure.
    - **Defendants' Proposal**: Linksmart is entitled to 35 hours of fact deposition time for each defendant, and 56 hours of fact deposition time for third-party witnesses. Each Defendant is entitled to 35 hours of fact deposition time with respect to Plaintiff, and 56 hours of fact deposition time for third-party witnesses. No fact witness may be deposed for more than 7 hours by any single party.
- *Expert Deposition Time:* The default under Rule 30(d) should apply. However, if an expert serves a report on more than one issue (e.g., infringement and invalidity), the expert may be deposed for one day on each report (for up to 7 hours per day). If an expert submits a report on the same subject in both cases (*e.g.*, a validity rebuttal report or an invalidity opening report), the expert will be deposed once (for up to 7 hours) on that report. At this time, the parties do not expect any expert to serve a single expert report regarding damages, infringement or non-infringement

for multiple defendants. If that changes, the parties agree to negotiate the appropriate limits for the deposition of any such expert.

### D. Experts

The Parties agree that, pursuant to Federal Rule of Civil Procedure 26(b)(4)(B), no draft expert reports, notes, outlines, or disclosures leading up to a final expert report or declaration are discoverable in whatever form. In addition, where a Party retains independent consultants or experts to further technical or consulting services or to give testimony with respect to the subject matter of this action, the following materials will be deemed to be privileged materials or materials otherwise protected from production based on a claim of privilege (attorney-client, work product or other privilege) and thus not discoverable:

(1) Correspondence between such independent consultants or experts and a party or its outside counsel;

(2) Drafts of expert reports, declarations or any other materials drafted by or for such independent consultants or experts regarding the subject matter of this action; and

(3) Communications between such independent consultants and experts and a party or its outside counsel that are related to drafts and/or revisions of expert reports, declarations, or other materials drafted by or for such independent consultants or experts, or that are related to preparation to testify at a hearing, trial, or deposition in this action.

Such protections provided herein are to be construed to be in addition to, and shall not diminish the protections provided in Fed. R. Civ. P. 26(b)(3)-26(b)(4). Nothing herein, however, limits the rights of the Parties to examine an expert or consultant concerning the information he or she relied upon in forming his or her opinions, which information shall not be privileged.

### V. OTHER DISCOVERY ISSUES

The Parties agree that no party is required to log privileged and/or work product documents created on or after April 20, 2018, the date Linksmart filed these actions. The Parties also agree that no party is required to log privileged and/or work product documents created during the course

of any prior litigation involving Plaintiff or the Defendants. The Parties agree that they may serve as many document and/or deposition subpoenas on third parties and as many subpoenas for depositions on written questions of custodians of business records of third parties as needed.

Defendants propose that as a general matter, the Parties do not need to search or produce email or other forms of electronic correspondence in response to Requests for Production. Linksmart disagrees with Defendants' proposal. Instead, Linksmart proposes that the parties negotiate a special procedure for the production of email or other forms of electronic correspondence.

The Parties agree that for papers not filed with the Court's ECF system, the service of papers electronically, such as through e-mail, FTP, or the use of online file repositories such as Box.com, constitutes proper service under Rule 5(b), so long as service (or notification of service via FTP, Box.com, etc.) is sent to the following email addresses:

- For Plaintiff: rak_linksmart@raklaw.com, bwang@raklaw.com, and aweiss@raklaw.com.
- For Deep Blue: dmcneely@winston.com, kpadmanabhan@winston.com, mmurray@winston.com, vkennedy@winston.com, and THartin@winston.com.
- For DCI: DG-DCI@goodwinlaw.com, ilevy@goodwinlaw.com, rfrederickson@goodwinlaw.com, cindychang@goodwinlaw.com, and jbova@goodwinlaw.com

Dated: January 6, 2020

Respectfully submitted,

By: */s/ Andrew D. Weiss*

Larry C. Russ (*pro hac vice*)
Marc A. Fenster (*pro hac vice*)
Benjamin T. Wang (*pro hac vice*)
Kent N. Shum (*pro hac vice*)
Andrew D. Weiss (*pro hac vice*)
Minna Y. Chan (*pro hac vice*)
**RUSS AUGUST & KABAT**
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
Telephone:   (310) 826-7474
Facsimile:   (310) 826-6991
Email:   lruss@raklaw.com
            mfenster@raklaw.com
            bwang@raklaw.com
            kshum@raklaw.com
            aweiss@raklaw.com
            mchan@raklaw.com

Charles R. Macedo (NY 2328318)
**AMSTER, ROTHSTEIN & EBENSTEIN LLP**
90 Park Avenue
New York, NY 10016
Telephone:   (212) 336-8074
Facsimile:   (212) 336-8001
Email:   cmacedo@arelaw.com

*Attorneys for Plaintiff*
LINKSMART WIRELESS TECHNOLOGY, LLC

Dated: January 6, 2020

By: */s/ Robert Frederickson*

Ira J. Levy
Cindy Chang
Jacqueline Genovese Bova
**GOODWIN PROCTER LLP**
620 Eighth Avenue
New York, NY 10018
Telephone:  (212) 813-8800
Facsimile:  (212) 355-3333
Email:  ilevy@goodwinlaw.com
cindychang@goodwinlaw.com
jbova@goodwinlaw.com


Robert Frederickson
**GOODWIN PROCTER LLP**
100 Northern Avenue
Boston, MA 02210
Telephone:  (617) 570-1000
Facsimile:  (617) 523-1231
Email:  rfrederickson@goodwinlaw.com

*Attorneys for Defendant*
DCI-DESIGN COMMUNICATIONS, LLC


Dated: January 6, 2020

By: */s/ K. Padmanabhan*

Krishnan Padmanabhan (Pro Hac Vice)
Michael M. Murray (2711265)
**Winston & Strawn, LLP**
200 Park Avenue
New York, NY 10018
Telephone:  (212) 294-6700
Facsimile:  (212) 355-3333
Email:  kpadmanabhan@winston.com
mmurray@winston.com

*Attorneys for Defendant*
DEEP BLUE COMMUNICATIONS, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on January 6, 2020, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF system, for filing and transmittal of a Notice of Electronic Filing to all Counsel of record.

                                                                              */s/ Andrew D. Weiss*
                                                                             Andrew D. Weiss